# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| CHARLES NORDQUIST, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>Defendant. )<br>_____ ) | 3:06-cv-00173 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 21] |

## I. MOTION PRESENTED

At docket 21, plaintiff Charles Nordquist moves for judgment pursuant to sentence four of 42 U.S.C. § 405(g), reversing the final decision of the Commissioner of Social Security and remanding for an award of benefits, or alternatively, for further administrative proceedings. At docket 23, defendant Michael Astrue, Commissioner of Social Security ("Commissioner"), opposes the motion. Plaintiff replies at docket 24. Oral argument was not requested, and it would not assist the court.

## II. BACKGROUND

On February 18, 2004, plaintiff Charles Nordquist protectively applied for social security income ("SSI") and disability insurance benefits ("DIB") under Titles XVI and II

of the Social Security Act ("the Act").[1] Nordquist alleged a disability onset date of February 17, 2001, and identified his disabling conditions as "depression, brain injury, personality disorder, and increased anxiety."[2] Nordquist's insured status report indicates that he was insured on the alleged disability onset date and that his insured status for DIB ended on December 31, 2006.[3] The record also shows that Nordquist has a college degree in music education and a masters degree in music performance; suffered brain injuries as a result of two separate accidents; and has worked as a van driver, cashier, janitor, substitute music teacher, and graduate assistant/office clerk during the past fifteen years.

The Social Security Administration ("SSA") denied Nordquist's application.[4] The SSA's decision was upheld on reconsideration. Nordquist had a hearing before an Administrative Law Judge ("ALJ") on May 18, 2005. At the time of the hearing, Nordquist was fifty-eight years old. At the hearing, Nordquist testified that in addition to his mental impairments, he also has back pain and problems with his feet, including plantar fasciitis. On November 23, 2005, the ALJ issued a decision finding that Nordquist is not entitled to DIB and not eligible for SSI under the Act.[5]

At step one, the ALJ found that Nordquist has not engaged in substantial gainful activity since the alleged disability onset date.[6] At step two, the ALJ found that Nordquist has two impairments that are "severe" within the meaning of the Act, namely "a traumatic brain injury from [a plane crash in] 1975, motor vehicle accident in 1959,

---

[1] Administrative Record ("AR") at 281, doc. 12. Hereinafter, references to the administrative record will simply include AR and the bates number.

[2] AR 24.

[3] AR 320.

[4] AR 260.

[5] AR 32.

[6] AR 30.

and low back pain."[7] The ALJ further found that while Nordquist has been diagnosed with depression, "the evidence indicates that this was mild, and thus, did not significantly limit the claimant's ability to perform basic work activities."[8] At step three, the ALJ found that Nordquist's impairments, alone or in combination, do not meet or equal a listed impairment.[9]

At step four, the ALJ determined that Nordquist retains the residual functional capacity ("RFC") to perform "medium work," and that due to his brain injury, "the claimant has moderate limitations regarding his abilities to understand and carry out instructions, pay attention, work with others, interact with public, get along with co-workers, and adapt to change in the work setting."[10] Given the RFC outlined above and based on the testimony of the vocational expert ("VE"), the ALJ concluded that Nordquist cannot return to his past relevant work "due to the limitations regarding contact with the public."[11]

At step five, the ALJ found that Nordquist is an individual of "advanced age" as defined by 20 C.F.R. §§ 404.1563 and 416.963, but that "transferable skills are not at issue in this case."[12] Based on the VE's testimony and the record as a whole, the ALJ found that "considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy" as a laundry folder, which is light unskilled work; dishwasher, which is medium unskilled work; and a hand packager, which is medium unskilled work.[13]

---

[7]AR 26.

[8]AR 27.

[9]AR 27.

[10]AR 27.

[11]AR 29.

[12]AR 29.

[13]AR 30.

On May 24, 2006, the SSA Appeals Council denied Nordquist's request for review of the ALJ's decision.[14] On July 26, 2006, Nordquist filed the underlying complaint seeking judicial review of the ALJ's decision. Nordquist now requests the court to reverse the ALJ's decision and to remand for an award of benefits, or alternatively, for further administrative proceedings.

## III. STANDARD OF REVIEW

For purposes of the Social Security Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months."[15] A person is not disabled if he or she is capable of engaging "in any...kind of substantial gainful work which exists in the national economy."[16]

Disability claims are evaluated using the five-step sequential analysis which is set forth in 20 C.F.R. § 404-1520.[17] Upon denial of disability benefits, a claimant may request the SSA Appeals Council to review the ALJ's decision.[18] Where, as here, the

---

[14]AR 11.

[15]42 U.S.C. § 423(d)(1)(A).

[16]42 U.S.C. § 423(d)(2).

[17]"The Commissioner follows a five-step sequential evaluation process in assessing whether a claimant is disabled.

> *Step one*: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> *Step two*: Does the claimant have a 'severe' impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> *Step three*: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step *four*: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step *five*: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled."
>
> *McCartey v. Massanari*, 298 F.3d 1072, 1075 n.6 (9th Cir. 2002) (citing 20 C.F.R. § 404.1520).

[18]20 C.F.R. § 404.967.

-4-

Case 3:06-cv-00173-JWS   Document 25   Filed 05/24/07   Page 4 of 14

Appeals Council denies a request for review, the decision of the ALJ represents the final decision of the Commissioner.[19]  The claimant may then seek judicial review of the ALJ's decision by the district court.[20]

On *de novo* review, the district court may enter, upon the pleadings and a transcript of the record, a judgment affirming, modifying, or reversing the ALJ's decision, with or without remanding the case for a rehearing.[21]  The ALJ's decision must be upheld if it is supported by substantial evidence and the ALJ applied the correct legal standards.[22]  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[23]  When evidence supports either confirming or reversing the ALJ's decision, the reviewing court may not substitute its judgment for that of the ALJ.[24]

## IV.  DISCUSSION

Nordquist argues that the ALJ's decision denying disability benefits is not supported by substantial evidence in the record and that the ALJ erred at steps two and five of the sequential analysis.  Nordquist specifically argues that the ALJ erred by rejecting the treating psychiatrist's opinion, finding Nordquist's testimony regarding his limitations "not entirely credible," and misinterpreting the VE's testimony.  The Commissioner argues that the court should uphold the ALJ's decision finding Nordquist not disabled because the ALJ properly evaluated the medical evidence and substantial evidence supports the ALJ's step five decision.  The court examines each of plaintiff's assignments of error below.

---

[19]*Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. § 404.981).

[20]42 U.S.C. § 405(g).

[21]*Id.*

[22]*Howard v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2001).

[23]*Id.* (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[24]*Batson*, 359 F.3d at 1196.

-5-

**Step Two Analysis**

Nordquist first argues that the ALJ erred at step two in evaluating claimant's mental impairments by combining Nordquist's "cognitive disorder, affective disorder, and personality disorder diagnosis together under the label 'brain injury.'"[25] In evaluating mental impairments pursuant to 20 C.F.R. § 404.1520a, the ALJ must first evaluate a claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment.[26] The ALJ then rates the degree of functional limitation resulting from the impairment in the following areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."[27] After rating the degree of functional limitation, the ALJ determines the severity of the claimant's mental impairment(s).[28] Finally, the ALJ's written decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and "must show a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)]."[29]

Here, the ALJ found that Nordquist's "traumatic brain injury" was a medically determinable severe impairment, but that Nordquist's depression did not constitute a medically determinable severe impairment. The ALJ's decision specifically states that "while the record includes a diagnosis of depression, the evidence indicates that this was mild, and thus, did not significantly limit the claimant's ability to perform basic work activities."[30] The ALJ's decision does not discuss Nordquist's claims of a personality disorder and increased anxiety.

---

[25]Doc. 21 at 17.

[26]20 C.F.R. § 404.1520a(b).

[27]20 C.F.R. § 404.1520a(c).

[28]20 C.F.R. § 404.1520a(d).

[29]20 C.F.R. § 404.1520a(e).

[30]AR 27.

Case 3:06-cv-00173-JWS   Document 25   Filed 05/24/07   Page 6 of 14

The evidence supports a finding that in addition to a cognitive disorder, Nordquist has the medically determinable mental impairment of major depressive disorder, and possibly a personality disorder. While the ALJ's decision discusses the functional limitations resulting from Nordquist's cognitive disorder, the ALJ failed to rate the degree of functional limitations caused by Nordquist's major depressive disorder and alleged personality disorder in activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation as required under § 404.1520a(c), nor did he rate the severity of these medically determinable mental impairments as required under § 1520a(d). The ALJ also failed to document his application of the technique for evaluating mental impairments in his decision as is required at step two under § 404.1520a(e). Because the ALJ did not evaluate the above mental impairments according to the technique set forth in 20 C.F.R. § 404.1520a, the ALJ did not apply the proper legal standard in evaluating Nordquist's mental impairments.

**Treating Psychiatrist's Opinion**

Nordquist next argues that the ALJ erred in rejecting the opinion of Dr. Ellen Halverson, Nordquist's treating psychiatrist. Dr. Halverson began treating Nordquist in July 2003. At that time, Halverson diagnosed Nordquist with recurrent major depression, cognitive disorder, and a history of closed head injuries.[31] Dr. Halverson noted that while psychological and neurological tests indicate that Nordquist does well cognitively, the evidence also shows that he has a frontal lobe injury, problems with initiating and sequencing complex tasks, lapses in social judgment, greater impulsivity, and a lack of insight.[32]

In an annual psychiatric evaluation conducted in March 2004, Dr. Halverson indicated that Nordquist had been treated with medication for major depression "really without any effectiveness,"[33] and that he had stopped taking the medication. Halverson

---

[31]AR 560.

[32]AR 557.

[33]AR 516.

stated that she suspected Nordquist has recurrent major depression, but also "question[ed] an element of Cognitive Disorder NOS versus Organic Affective Disorder," and Organic Personality Disorder. Halverson determined that Nordquist had a Global Assessment of Functioning ("GAF") level of 50.[34] Her evaluation also indicated that Nordquist "feels stonewalled by Vocational Rehab and admittedly is somewhat of a somaticizer and tends to focus on physical symptomology."[35]

In a Mental Residual Functional Capacity Questionnaire completed in March 2005, Dr. Halverson found that Nordquist was "unable to meet competitive standards" in the following areas: work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; and deal with stress of semiskilled and skilled work.[36] "Unable to meet competitive standards" is defined as meaning that a claimant "cannot satisfactorily perform an activity independently, appropriately, effectively and on a sustained basis in a regular work setting."[37] Dr. Halverson also found that Nordquist had an extreme limitation in dealing with normal work stress. Dr. Halverson further opined that Nordquist's psychiatric difficulties "keep him from dealing effectively on an ongoing basis [with] his mild cognitive dysfunction. He is stuck (frozen) in time, from/with his abilities prior to his airplane crash back in the 70's."[38]

"In disability benefits cases, physicians typically provide two types of opinions: medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e., opinions about whether a

---

[34]AR 517.

[35]AR 516.

[36]AR 605-607.

[37]AR 605.

[38]AR 606.

-8-

Case 3:06-cv-00173-JWS   Document 25   Filed 05/24/07   Page 8 of 14

claimant is capable of any work, given his or her limitations."[39]  "Under the regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight."[40]  The regulations further provide that the "opinions of treating doctors should be given more weight than opinions of doctors who do not treat the claimant."[41]  "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."[42]  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."[43]

In his decision, the ALJ states that he assigned Dr. Halverson's opinion "little weight" on the grounds that "Dr. Halverson's general mental limitations, as well as her ultimate conclusion, are inconsistent with the record as a whole."[44]  The ALJ specifically stated that Dr. Halverson's opinion in March 2005 that "multiple psychiatric limitations prevented the claimant from performing competitive work" was inconsistent with her assessment that "claimant was a 'somaticizer.'"[45]  Furthermore, instead of giving Dr. Halverson's opinions regarding Nordquist's limitations controlling weight, the ALJ found that Nordquist has moderate limitations in his "abilities to understand and carry out instructions, pay attention, work with others, interact with public, get along with co-

---

[39] *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

[40] *Id.*

[41] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

[42] *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

[43] *Lester v. Chater*, 830 F.3d 821, 830 (9th Cir. 1995).

[44] AR 28.

[45] AR 28.

workers, and adapt to change in the work setting,"[46] presumably based on the Mental Residual Functional Capacity Assessment form completed by Dr. Feigin, a Disability Determination Services ("DDS") examining psychiatrist.

Nordquist argues that Dr. Halverson's statement "that the Claimant focuses on his physical symptomology is totally consistent with her opinion that he does not have insight into his mental problems and does not have realistic expectations" of his abilities.[47] The court concurs.[48] Moreover, the court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the treating psychiatrist's opinion regarding Nordquist's functional limitations, and adopting an examining psychiatrist's opinions regarding Nordquist's functional limitations.

The ALJ's statement that Dr. Halverson's assessment of Nordquist's "general mental limitations, as well as her ultimate conclusion, are inconsistent with the record as a whole" is not supported by substantial evidence. The record shows that all of the treating and examining psychiatrists agree that Nordquist has both a cognitive disorder and an affective disorder. In addition, Dr. Halverson, two examining psychiatrists, and an examining clinical psychologist suspect that Nordquist may also have a personality disorder.[49] Most importantly, the majority of treating and examining physicians agree that while Nordquist is intelligent and well-educated, he has difficulties sustaining employment as a result of his combined mental impairments. For the reasons stated above, the ALJ erred in rejecting the treating psychiatrist's opinion regarding Nordquist's functional limitations and their effects on his ability to sustain employment.

---

[46]AR 29.

[47]Doc. 21 at 19.

[48]By definition, a "somaticizer" is a person whose physical illnesses or physical symptoms are caused by neurosis.

[49]AR 167, 194, 451, 517.

Case 3:06-cv-00173-JWS   Document 25   Filed 05/24/07   Page 10 of 14

**Claimant's Testimony**

Nordquist next argues that the ALJ erred in finding that Nordquist's "allegations regarding his limitations are not totally credible."[50] "While an ALJ is responsible for determining the credibility of a claimant, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons."[51] "In addition, the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."[52] Furthermore, the evidence upon which the ALJ relies must be substantial.[53]

Here, the ALJ determined that Nordquist was "credible to the extent that he alleged he would experience some limitations," and found that Nordquist had moderate limitations in his mental capacity.[54] The court finds that the ALJ's assessment of Nordquist's credibility is not supported by substantial evidence, because the ALJ failed to properly assess and consider the degree of functional limitations resulting from Nordquist's multiple mental impairments and failed to credit the treating psychiatrist's opinion regarding the extent of Nordquist's functional limitations.

**Vocational Expert Testimony**

In reaching a finding of "not disabled," the ALJ purports to rely on the VE's testimony that a person capable of a medium level of exertion with moderate limitations in mental capacity could work as a laundry folder, dishwasher, and hand packager. Nordquist argues that the ALJ misinterpreted the VE's testimony and asserts that the VE's testimony actually supports Nordquist's disability claim. The court agrees.

In the hypothetical posed to the VE, the ALJ asked the VE to assume an individual who was capable of a medium level of exertion but had moderate limitations

---

[50] AR 31.

[51] *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

[52] *Id.*

[53] *Id.*

[54] AR 28.

-11-

in his abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.

The VE testified that moderate limitations in the above areas could affect a person's ability to maintain employment. Upon questioning from Nordquist's counsel, the VE further testified that "moderate limitations" can impact anywhere from 1/3 up to 2/3 of a work day, and that a person would "most likely not" be able to sustain employment if "for 1/3 of the day the person's ability to sustain concentration, attention and pace is affected so that they either make mistakes or they can't keep the pace of the work."[55]

Because the ALJ's decision denying plaintiff's application for disability benefits is not supported by substantial evidence nor free of legal error, the court reverses the ALJ's decision denying benefits. Under sentence four of 42 U.S.C. § 405(g), the court has discretion to remand a case for either additional evidence and findings or to award benefits.[56] The court "may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."[57] "Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he

---

[55]AR at 669.

[56]*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

[57]*Id.*

considered the claimant's evidence."[58] A remand for benefits is particularly indicated where a claimant has already experienced lengthy, burdensome litigation.[59]

A remand for immediate payment of benefits is appropriate in this matter because the ALJ failed to provide legally sufficient reasons for rejecting the opinion of the treating psychiatrist, there no are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find Nordquist disabled if he credited the treating psychiatrist's opinion. In addition, the court notes that Nordquist is now sixty years of age, it's been over three years since Nordquist applied for benefits, and "further delays at this point would be unduly burdensome."[60]

Moreover, because Nordquist is now close to retirement age, the Commissioner must satisfy a more stringent legal standard before denying him benefits.[61] "Agency regulations recognize that an older claimant will generally be unable to compete effectively against younger persons in the job market unless [he] has some advantage."[62] Even if the court did remand, it is highly unlikely that the Commissioner would be able to sustain his burden of showing that Nordquist is highly marketable as a dishwasher, laundry folder, or hand packager.

---

[58] *McCartey*, 298 F.3d 1076.

[59] *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001) .

[60] *Terry v. Sullivan*, 903 F.3d 1273, 1280 (9th Cir. 1990).

[61] *Id.* at 1279.

[62] *Id.* at 1277.

## V. CONCLUSION

For the reasons set out above, plaintiff's motion at docket 21 is **GRANTED**, and this matter is **REMANDED** for an award of benefits with a disability onset date of February 17, 2001.

DATED at this 23rd day of May 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE